**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| **WILLIAM DERRECK HOREY,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. CIV-26-287-R** |
| | ) | |
| **SECURITY CREDIT SERVICES, LLC,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## ORDER

Before the Court is Security Credit Services's Motion to Dismiss [Doc. No. 21] Mr. William Derreck Horey's Complaint [Doc. No. 12]. The Court grants the Motion in part and denies it in part.

Mr. Horey alleges that he contacted SCS to inquire about debts that he owed. It responded in part by disclaiming ownership over the debts, but later sued Mr. Horey twice in state court to recover a debt; both suits have since been dismissed. Mr. Horey also alleges that SCS sent inaccurate information regarding his credit to the big three credit reporting agencies. Mr. Horey alleges violations of two federal statutes for the above-alleged conduct as well as two state-law claims for negligence and intentional infliction of emotional distress. His federal claims mostly survive; his state claims do not.

## LEGAL STANDARD

Mr. Horey's complaint must contain "a short and plain statement of [his] claim showing that [he] is entitled to relief." FED R. CIV. P. 8(a)(2). To show entitlement to relief, and survive a motion to dismiss, he must show his claims' facial plausibility—something

greater than mere possibility and less than conclusive proof—"allow[ing] the Court to draw the reasonable inference that [SCS] is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662 (2009); *McNellis v. Douglas Cnty Sch. Dist.*, 116 F.4th 1122, 1132 n.6 (10th Cir. 2024). At this stage, the Court assumes that Mr. Horey's well-pleaded factual allegations are true, and "draw[s] all reasonable inferences in [his] favor." *Brown v. City of Tulsa*, 124 F.4th 1251, 1263 (10th Cir. 2025).

## DISCUSSION

### I. The Court declines to dismiss Mr. Horey's claim under the Fair Credit Reporting Act.

The Fair Credit Reporting Act (FCRA) authorizes private individuals to sue "furnishers" of "information to consumer reporting agencies" for willfully "fail[ing] to conduct a reasonable investigation . . ." into information for which there is "a dispute with regard to [its] completeness or accuracy." *Ward v. Nat'l Credit Sys., Inc.*, 182 F.4th 918, 926 (10th Cir. 2026); 15 U.S.C. § 1681s-2(b)(1); 1681n. But for SCS to investigate, Mr. Horey needed first to dispute the information's accuracy with a credit reporting agency, which would then evaluate the claim and notify SCS. *Id.* § 1681i(a)(1). SCS claims Mr. Horey fails to (1) allege that he notified a reporting agency and fails to (2) allege that SCS received notice from a credit reporting agency. Quite the opposite. Mr. Horey alleges that "SCS received timely notice of [his] disputes regarding inaccurate and incomplete information it furnished" and that "[u]pon notice, [SCS] had a duty to conduct a reasonable investigation." Doc. No. 12 at 3 ¶¶ 3–4. Mr. Horey attaches to his Complaint three letters to the main credit reporting agencies, one of which replied to him. [Doc. Nos. 12-2, 12-3,

12-4, 12-6].[1] Assuming at this stage that the letters are genuine, this claim easily survives the Motion, and the Court declines to dismiss it.

## II. The Court dismisses two of Mr. Horey's claims under the Fair Debt Collection Practices Act.

Mr. Horey's next claims arise under the Fair Debt Collection Practices Act. 15 U.S.C. § 1692. He alleges three violations: (1) "abusive, deceptive, and unfair debt collection practices" under § 1692d; (2) "false, deceptive, or misleading representation[s]" under § 1692e; and (3) "unfair or unconscionable means to collect or attempt to collect any debt" under § 1692f. *See* §1692k. To prevail, Mr. Horey must show that:

- He is a "consumer" under § 1692a(3);
- The underlying debt "arose out of a transaction entered into primarily for personal, family, or household purposes"; § 1692a(5);
- SCS "is a debt collector under" § 1692a(6); and
- By "its acts or omissions, [SCS] violated the FDCPA."

*Tavernaro v. Pioneer Credit Recovery, Inc.*, 43 F.4th 1062, 1067 (10th Cir. 2022). Mr. Horey plausibly alleges an FDCPA violation under § 1692e.

### A. Mr. Horey plausibly pleads the first three elements of the FDCPA.

SCS doesn't challenge that Mr. Horey is a consumer because he's a "natural person obligated or allegedly obligated to pay a debt." § 1692a(3). But it does argue that Mr. Horey

[1] Mr. Horey fails to cross reference any of these letters by citing to them in his allegations. Although the Court will liberally construe his pleadings where appropriate, "the Court will not pick through the [Complaint's] voluminous exhibits to find evidentiary support for [his] claims." *Brown v. Linear, L.L.C.*, No. CIV-15-280-R, 2016 WL 879333, at *3 n.9 (W.D. Okla. Mar. 7, 2016).

fails to allege that his debt was primarily for "personal, family, or household purposes." § 1692a(5). Mr. Horey says he incurred this debt primarily for those purposes, and although he doesn't say it explicitly, he ties the debt to his alleged medical problems in a letter to Transunion. *See* [Doc. No. 12-3]. So the Court concludes that he plausibly alleges a personal "debt" under § 1692a(5).

SCS also argues that Mr. Horey fails plausibly to allege that it's a "debt collector," defined as "any person . . . who regularly collects or attempts to collect . . . debts owed or due or asserted to be owed or due to another." *Id.* § 1692a(6).[2] Given that much of Mr. Horey's claims arise out of two lawsuits SCS filed against him, both of which sought court orders against Mr. Horey to repay a debt, the Court is convinced that SCS is plausibly a debt collector.

**B. Mr. Horey's claim for abusive practices is not plausible.**

"[T]he FDCPA applies to the litigating activities of lawyers." *James v. Wadas*, 724 F.3d 1312, 1316 (10th Cir. 2013). But the activities must be "conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt." 15 U.S.C. § 1692d. Congress illustrated a list of abusive practices, including (1) using violence or (2) "obscene or profane language," (3) publishing "a list of consumers who allegedly refuse to pay their debts," (4) advertising "for sale of any debt to coerce payment of the debt," and (5) causing continuous phone calls "with intent to annoy,

[2] The definition also encompasses people "who use[] any instrumentality of commerce or the mails in any business the principal purpose of which is the collection of any debts." § 1692a(6).

abuse, or harass any person at the called number." *Id.* Simply filing a lawsuit isn't enough. *Davis v. Nebraska Furniture Mart, Inc.*, 567 F. App'x 640, 642 (10th Cir. 2014).[3] In *Davis*, the Tenth Circuit affirmed summary judgment for the debt collector on FDCPA claims despite the debt collector's decision to obtain a bench warrant "as leverage to collect a debt rather than to vindicate the authority of the court." *Id.* SCS didn't seek a bench warrant for Mr. Horey; it merely filed two lawsuits, neither of which resulted in a judgment against him. If the *Davis* debtor loses on its facts, Mr. Horey surely loses on his much tamer allegations. The Court concludes that his allegations fail to state a claim under § 1692d.

**C. Mr. Horey's claim for unfair practices is not plausible.**

"A debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt." § 1692f. Unfair practices include, among others, collecting ancillary charges not "expressly authorized by a debt agreement . . . " or "[t]aking or threatening to take any nonjudicial action to effect dispossession or disablement of property if" the collector doesn't intend to take the property, the property's exempt, or the debt collector lacks a security interest. *Id.* While not exhaustive, Mr. Horey fails to plead anything similar. Disregarding his conclusory allegations here, the Court has no trouble concluding that he fails to plausibly allege an unfair-practices claim. *See Baldwin v. Glob. Lending Servs., LLC*, No. CIV-25-121-D, 2025 WL 1426564, at *4 (W.D. Okla. May 16, 2025) (dismissing

---

[3] The Tenth Circuit hasn't said as much in a published opinion, but the Sixth and Eleventh Circuits have been explicit. *Miljkovic v. Shafritz & Dinkin, P.A.*, 791 F.3d 1291, 1305 (11th Cir. 2015); *Harvey v. Great Seneca Fin. Corp.*, 453 F.3d 324, 330 (6th Cir. 2006) (concluding that the illustrated practices in § 1692d "are not comparable to the single filing of a debt-collection lawsuit").

FDCPA claim where the complaint contained only conclusory allegations suggesting a § 1692d violation).

**D. Mr. Horey's claim for false representations is plausible.**

"A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt." § 1692e. These include, relevant here, "us[ing] any false representation or deceptive means to collect or attempt to collect any debt . . . ." or "false[ly] represent[ing] or impl[ying] that accounts have been turned over to innocent purchasers for value." *Id.* § 1692e(10, 12). SCS wouldn't be liable under the FDCPA, however, simply for making false representations; they must be "materially false," assessed under a "reasonable consumer" standard. *Tavernaro*, 43 F.4th at 1072. Under that standard, the Court "assume[s] the reasonable consumer would read a communication in its entirety and make sense of a communication by assessing it as a whole and in its context." *Id.* The Court first asks (1) "whether the reasonable consumer could reasonably interpret the representation to have multiple meanings, one of which is untrue." *Id.* If the reasonable consumer could conclude that at least one meaning is inaccurate, then the Court asks (2) "whether the reasonable consumer would have his ability to intelligently respond frustrated." *Id.*

Mr. Horey easily satisfies that test. He alleges that SCS sent him letters where it twice disclaimed ownership over an at-issue debt—claiming instead that it had sold the debt to another entity—and then sued him twice in state court to recover that debt. [Doc. Nos. 12-5; 12-7]. Taking Mr. Horey's allegations as true, a reasonable consumer could interpret the disclaimer letters as being false if, after receiving notice that a debt collector

no longer owned a debt, that same debt collector then sued them. That consumer would then have to defend against a lawsuit while under the impression that another entity owned the debt. This would frustrate a consumer's ability to intelligently respond. *See Warden v. Tschetter Sulzer, P.C.*, No. 122CV00271CNSNRN, 2022 WL 17416732, at *5 (D. Colo. Dec. 5, 2022) (declining to dismiss § 1692e claim where debt collector allegedly failed to dismiss pending eviction actions after it informed debtor tenants it would do so if they signed a stipulation). So the Court declines to dismiss Mr. Horey's claim under § 1692e.

## III. The Court dismisses Mr. Horey's negligence claims.

Mr. Horey next raises two negligence claims based on the same conduct he alleges in his federal claims against SCS.[4] But any duty that SCS owed him wouldn't extend to the injuries he alleges.

Negligence under Oklahoma law requires "proof of a duty, a breach of that duty, and causation." *Martinez v. Angel Expl., LLC*, 798 F.3d 968, 974 (10th Cir. 2015). An "essential" element, "[t]he most important consideration" in determining whether a defendant owes a duty of care is "whether the plaintiff is foreseeably endangered by the defendant's conduct." *Gaines-Tabb v. ICI Explosives USA, Inc.*, 995 F. Supp. 1304, 1316 (W.D. Okla. 1996) (citation modified). But "[t]he plaintiff must be 'foreseeably endangered

[4] These claims, titled "Negligent Aggravation of a Pre-Existing Condition" and "Negligent and/or Intentional Aggravation of a Pre-Existing Medical Condition" are essentially the same claim for negligence, since no independent tort involving a medical condition specifically exists under Oklahoma law. In any event, "An accidental injury that aggravates a prior diseased condition is a compensable injury." *See Standard Roofing & Material Co. v. Ross*, 279 P.2d 947, 949 (Okla. 1955). So the Court treats them as ordinary negligence and disposes of them on the same grounds.

by defendant's conduct with respect to all risks that make the conduct unreasonably dangerous.'" *McGehee v. Forest Oil Corp.*, 908 F.3d 619, 625 (10th Cir. 2018) (quoting *Lowery v. Echostar Satellite Corp.*, 160 P.3d 959, 964 (Okla. 2007)) (citation modified). This means that even "if a risk of harm [is] foreseeable but the risk [does] not make the defendant's conduct unreasonably dangerous, no duty of care will be found." *Id.* at 626.

Mr. Horey alleges that SCS owed him a duty, that he provided it notice of his serious medical condition, and that SCS's actions foreseeably caused his condition to worsen, leaving him, among other things, wheelchair dependent. Doc. No. 12 at 4–6. But that's irrelevant because the Complaint lacks any factual allegations that the risk of aggravating Mr. Horey's serious medical condition rendered SCS's actions—allegedly reporting false information to credit agencies and filing duplicative lawsuits—unreasonably dangerous. One might expect that abusive debt-collection practices could, at some point, create a risk of harm sufficient to aggravate a preexisting condition, but for the reasons outlined above concerning § 1692d, SCS's conduct, as alleged, simply didn't create that kind of risk. Instead, Mr. Horey simply states that because SCS was on notice of his condition, they bore a duty to refrain from their actions, thus, according to him, rendering his injuries foreseeable. That isn't enough. *Cf. Robertson v. Frontera Produce, Ltd.*, No. CV-11-1321-R, 2014 WL 12729280, at *1; 3 (W.D. Okla. Jan. 23, 2014) (concluding that defendant food safety auditor owed packing facility employees a duty where the defendant gave the facility a "superior" safety rating despite "a general lack of awareness of food safety principles," which later led to a listeria outbreak).

Moreover, in addition to foreseeability, the other relevant factors the Court considers when determining whether to extend a duty counsel against imposing a duty on SCS here. *Lowery*, 160 P.3d at 964 n.4.[5] Even if Mr. Horey's harm were foreseeable, it surely wouldn't have been "certain[]," filing a lawsuit is not "moral[ly] blame[worthy]," and the Court is reluctant to impose a duty on those whose allegedly wrongful conduct is simply filing a lawsuit. *See Winkler v. Andrus*, 594 F.2d 775, 778 (10th Cir. 1979) ("Judicial decisions are not made so as to discourage assertion of rights in court.").

Although Mr. Horey disagrees, he does no more than repeat his conclusory allegations and cites no case law supporting his theory that providing SCS notice of his condition established a duty not to sue him to collect a debt. He adds that SCS "is liable for the full extent of the aggravated harm." Doc. No. 12 at 5. True enough; if SCS were liable to Mr. Horey, it'd be liable for any actual and proximate injuries it caused. *Atherton v. Devine*, 602 P.2d 634, 636–37 (Okla. 1979). But that's beside the point since SCS isn't plausibly liable under a negligence theory. The Court thus dismisses Mr. Horey's negligence claims.

**IV. The Court dismisses Mr. Horey's IIED claim.**

Mr. Horey's final claim is for intentional infliction of emotional distress. An IIED claim requires proof of "extreme and outrageous" conduct that is either intentional or

---

[5] Those factors other than foreseeability include: "[D]egree of certainty of harm . . . ," "moral blame attached to defendant's conduct," the "need to prevent future harm," and the "extent of the burden to the defendant and consequences to the community of imposing the duty on the defendant."

reckless, resulting in severe emotional distress. *Comput. Publ'ns, Inc. v. Welton*, 49 P.3d 732, 735 (Okla. 2002). To qualify as extreme and outrageous, SCS's conduct must be "so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency . . . [and] regarded as atrocious and utterly intolerable in a civilized community." *Id.* The bar for IIED claims is, therefore, substantially higher than proving an abusive-debt-collection-practice claim under § 1692d. As such, Mr. Horey's conclusory allegations, which venture no further than his previous ones discussing the two lawsuits and alleged false statements, cannot plausibly support an IIED claim. While some of these allegations might plausibly violate the federal statutes above, that doesn't necessarily mean they reach down to the depths of IIED. The Court dismisses his final claim.[6]

Accordingly, the Court declines to dismiss Mr. Horey's FCRA claim and his FCDPA claim under § 1692d, but dismisses his negligence and IIED claims.[7]

---

[6] Mr. Horey also fails plausibly to allege that he suffered severe emotional distress. He says he "in fact suffered severe emotional distress, including anxiety, fear, depression, sleep disruption, and physical worsening of his [condition]." Doc. No. 12 at 5. Courts have dismissed IIED claims far more specific than that. *See Mengert v. United States*, 120 F.4th 696, 714 (10th Cir. 2024) (concluding that plaintiff's allegations of distress—which included "fear of loss of control of her body, sweating, tightness in throat, headache, and hot flashes, followed by emotional numbness; and severe shaking when reminded of the incident, such that she cannot control the movement of her arms and that the trembling of her legs requires her to sit to avoid falling"—were insufficient to state a claim for IIED). So Mr. Horey's IIED claim fails twice over.

[7] The Court also denies Mr. Horey's perfunctory request for leave to amend. To request leave to amend, he must file a separate motion and attach the amended pleading. W.D. Okla. LCvR7.1(c); 15.1.

IT IS SO ORDERED this 24th day of November 2026.

DAVID L. RUSSELL
UNITED STATES DISTRICT JUDGE